The cause was continued for advisement, and at this term the opinion of the Court was delivered by
Parsons, C. J.,
(who stated the history of the cause, and proceeded.) The right which the father of the respondent had to convey any of the lands he held in tail must be derived from the statute of March 8, 1792. By that statute it is made lawful foi any person of full age, seised in fee tail of any lands, by deed duly executed before two subscribing witnesses, acknowledged before the Supreme Judicial Court, Court of Common Pleas, or a justice of the peace, and registered in the records of the county where the lands are, for a good or valuable consideration, bona fide to con ye) such lands, or any part thereof, in fee simple, to any person capable of taking and holding such estate ; and such deed, so made, executed, acknowledged, and registered, shall bar all estates tail in such lands, and all remainders and reversions expectant thereon.
* From inspecting the deeds produced in evidence in [ * 451 ] this cause, it appears that two subscribing witnesses, to whose credibility no objection is made, have certified that they were signed, sealed, and delivered, in their presence. And it further appears that the grantor, on the same day, acknowledged that each instrument was his deed before a justice of the peace.
One objection made by the respondent is, that, admitting the deeds to have been executed in the form and manner required by the statute in this case, yet these conveyances are not bond fide, being made, not for a valuable consideration, but for the purpose of depriving the heir in tail of his inheritance. The deeds purport to be for a valuable consideration in money, and for love and affection to his issue, which is a good consideration. The statute also provides that the conveyance may be on good consideration. It is therefore very clear that the statute intended that the tenant in tail *406 might bar the heir in tail, by deed conveying the land to his relatives, executed for a good although not a valuable consideration This he might do by a common recovery; and this method by deeu is substituted by the statute in the place of that common assurance, the effect of which is founded on legal fictions. And it is certain that justice, or parental affection, will often induce parents who hold their lands in tail to make provision for the younger branches of their family out of the entail. As the statute has made the estate tail assets for the payment of the debts of the tenant, before and after his decease, a bona fide conveyance was required by the statute, to prevent alienations to defraud creditors, and not to protect the heir in tail. This objection cannot prevail.
The other objection is that, by the statute, the conveyance should be completed, and the estate pass, in the lifetime of the tenant in tail, and that the deed should be sealed, delivered, and acknowledged, by him. as his deed ; that, in the case at bar, the deeds were delivered by the grantor to Judge Wells, not as his deeds, but as his writings or escrows, to be delivered as his deeds by the judge to the grantees on his, the grantor’s, death; that they could have no effect until delivered by the judge accordingly; [ *452 ] *and, as the grantor was dead before the second deliv cry, they were never his deeds, but are void.
This objection seemed to deserve, mucli consideration. The statute certainly intended that the conveyance of the estate tail should be executed in the lifetime of the tenant; and therefore, if there be no acknowledgment of the deed by him, the defect cannot be supplied by the testimony of the subscribing witnesses after his death, as it may be in conveyances of estates not entailed. The reason is, as common recoveries must be suffered in the lifetime of the tenant in tail, and at a court holden at stated times, and the heir in tail has a chance that the tenant may, after the commencement of the suit, die before the term, so it was intended to leave him the chance of the tenant’s dying before acknowledgment, which, as the statute was first drawn, could be made only in some court of record ; although, as it. was amended, it may now be made before a justice of the peace. There is therefore some chance saved to him, but of much less consequence than it was before the bill was amended.
The law, so far as it relates to the nature of this objection, is very well settled. If a grantor deliver any writing as his deed, to a third person, to be delivered over by him to the grantee, on some future event, it is the grantor’s deed presently, and the third person is a trustee of it for the grantee ; and if the grantee obtain the writing from the trustee before the event happen, it is the deed o *407 .he grantor, and he cannot avoid it by a plea of non est factum, whether generally or specially pleaded. This appears from Perk 143, 144, and from the case of Bushell vs. Pasmore, 6 Mod. 217, 218. But if the grantor make a writing, and seal it, and deliver it to a third person, as his writing or escrow, to be by him delivered to the grantee, upon some future event, as his, the grantor’s, deed, —■ and it be delivered to the grantee accordingly, — it is not the grantor’s deed until the second delivery; and if the grantee obtain the possession of it before the event happen, yet it is' not the grantor’s deed, and he may avoid it by pleading ñora est factum. This appease from Perk. 142, 137, 138. (a)
*It is generally true that a deed delivered as an [*453 J escrow, to be delivered over as the deed of the party making it, on a future event, takes its effect from the second delivery, and shall be considered as the deed of the party from that time. Perk. 143, 144. —3 Co. 35, b, 36, a.
Whether the deeds in this Case were delivered to Judge Wells as writings to be delivered over as the grantor’s deeds on his death, or whether they were delivered as the deeds of the grantor to Judge Wells, in trust for the grantees, to be delivered to them on the grantor’s death, is a question of fact, to be determined by the evidence. This evidence results from the testimony of Judge Wells, and from the inspection of the deeds. The deeds appear to have been signed, sealed, and delivered, in the presence of two subscribing witnesses, and to have been acknowledged as the deeds of the grantor before a justice of the peace. The witness swears that the grantor did then sign, seal, and deliver, them for the use of the grantees. Thus far there can be no doubt. But the witness further testifies that, because the grantor was to have the use of the premises during his life, and some of the grantees being minors, the deeds were delivered to him as escrows, to be delivered to the grantees upon the grantor’s death. What the witness understood by escrow is not explained. He might consider them as escrows, because he was to have the custody of them until the grantor’s death. To aid his memory, he therefore refers us to the memorandum he made, at the time, upon the wrapper of the deeds. In that memorandum they are called the two deeds of the grantor, naming him, to the grantees, naming them, to be kept until the death of the grantor, and then to be delivered to the grantees. Here they are not called the writings, or escrows, but the deeds, of the grantor. The weight of *408 the evidence is certainly very great, if not conclusive, in favor of the deeds having been delivered by the grantor, as his deeds, and deposited with Judge Wells, in trust for the grantees. Upon this ground’ the. deeds were very properly admitted as evidence, and the direction of the judge was correct.
• * 454 ] * But if the deeds are to be considered as delivered to Judge Wells, not as the deeds, but as the writings, of the grantor, we must not thence conclude that they are void. Although generally an escrow takes its effect from the second delivery, yet there are excepted cases, in which it takes its effect, and is considered the deed of the maker, from the first delivery. The exception is founded on necessity, ut res valeat. Thus Perk. 139, 140. If a feme sole sea] a writing, and deliver it as an escrow, to be delivered over on condition, and she afterwards marry, and the writing be then delivered over on performance of the condition, it shall be her deed from the first delivery ; otherwise, her marriage would defeat it. In Brook’s Reading, on the statute of limitations, p. 150. there is another exception. A. delivers a deed, as an escrow, to J. S., to deliver over on condition performed, before which A. becomes non compos mentis ; the condition is then performed, and the deed delivered over; it is good, for it shall be A.’s deed from the first delivery. Another exception is in 3 Co. 35, b, 36, a. Lessor makes a lease by deed, and delivers it as an escrow, to be delivered over on condition performed, before which lessor dies, and after, it is delivered over on condition performed : the lease shall be the deed of the lessor from the first delivery. There is also a strong exception in 5 Co. 85. If a man deliver a bond as an escrow, to De delivered on condition performed, before which the obligor or obligee dies, and the condition is after performed — here there could be no second delivery, yet is it the deed of the obligor from the first delivery, although it was only inchoate ; but it shall be deemed consummate by the performance of the condition.
Therefore, if the deeds in this case were delivered to Judge Wells as escrows, and by him delivered over on the death of the grantor, they must take their effect, and be considered as the deeds of the grantor, from the first delivery, he being dead at the second delivery. And the cases in 3 Co. 36, a, and 5 Co. 85, are in point. It may here be observed, that it is not to be presumed that it was the intention of the grantor to deliver these deeds as escrows, to be after delivered as his deeds, on the event of his death; [ * 455 ] when, from the nature of the event, * they could not be considered as his deeds from the second delivery. The presumption is violent that he considered Judge Wells as a trustee of the grantees. But whether the deeds were delivered to *409 him as escrows, or in trust for the grantees, — in either case the .verdict must stand, and the first judgment be entered thereon, viz., that partition be made ; and let a warrant issue to commissioners to make partition. (a)

 Vide Doe vs. Knight, 5 D. & Cr. 671. —8 D. & R. 349. — Murray vs. Earl of Stair, 2 B. & Cr. 87. — Eisdale vs. Oxenham, 3 B. & Cr. 230.— Cecil vs. Butcher, 2 Jac. & Walk. 573. — Jones vs. Jones, 6 Conn. 11.—Souverbye vs. Arden, 1 Johns Ch. C. 240.

 Hatch vs. Hatch & Al. 9 Mass. Rep. 307.
Quere, whether, if the instrument in the above case was delivered to Wells, to take effect on the death of the grantor, it was not testamentary. It seems to be «veil established that an instrument, whatever its form may be, whether it be a deec poll, or an indenture, or other writing, is testamentary, in its quality and operation, if it be intended not to operate until the death of the maker of it. — Shergold vs. Shergold, 1 Phillim. Rep. 10, note (h).—Manvick vs. Taylor, ibid. 10, note (i).— Thorold vs Thorold, ibid. p. 1.— Greene vs. Proud, 1 Mod. R. 117. —Habergham vs. Vincent, 2 Ves. 204, S. C. — 4 Br. C. C. 353, nom. Stanfield vs. Vincent. — Peacock vs. Monk, 1 Ves. Jun. 132. — Hickson vs. Welham, 1 Ch. Cas. 248. — Metham vs. Duke of Devonshire, 1 Peere Will. 529. — Rigden vs. Valier, 2 Ves. 258. — Healy vs. Copley, 7 Br. P. C. by Tom. 496. — Atty. General vs. Jones, 3 Price, 358. — Dyer, 314. — 6 Pl. 97. — Powell on Devises, by Jarman, vol. i. pp. 10—52, and notes. — 1 Rob. on Wills, p. 145. — And it has been held that the intention of the maker may be ascertained not only from the instr ’menl but from extrinsic testimony. — Liles vs. Liles, 2 Nott & M'Cord, 531.— Milledge vs. Laman, 4 Dess. 617. —Habersham vs. Vincent, 2 Ves. in 204—231. — Rigden vs. Valier, 2 Ves. Sen. 255—258