## Alsop *against* Swathel and others.

Where the question to be tried was, whether certain shares in the *Hartford Stage Company* were the property of *A.*, at the time of his death ; the plaintiff claimed, that they were bought by *B.*, for *A.*, and paid for, by the income from them ; the defendant claimed, that they were bought by *B.*, not for *A.* as his property, but with the intent of permitting him to receive the dividends, during his life, and after his death, of conveying them to his family for their support ; the court charged the jury, that if they should find, that the shares were bought for *A.*, with the view of their being his property, their verdict must be for the plaintiff ; and the jury found for the defendant ; it was held, that the verdict, under this charge, established the fact, that the shares were not bought for *A.*, as his property, but by *B.*, for the benefit of *A.'s* family ; and that the charge, so far as the plaintiff was concerned, was unexceptionable.

A written instrument takes effect only by and from its delivery.

And although no particular form of delivery is requisite, it is necessary, that by some expression or act, the party executing the instrument put it into the possession of the other party.

Where the maker of a bill of sale of personal property, placed it in the hands of a third person, to keep, or to hold it subject to the order of the depositor; it was held, that there was no delivery, actual or constructive, to the other party.

In a charge to the jury, it is sufficient for the court to express its opinion upon the questions raised, by the parties, on the trial; and it is no ground for a new trial, that the court omitted to give any direction upon other points, which the evidence might present.

THIS was an action on a bond, given to the plaintiff, as judge of probate, by the defendants, as administrators of the estate of *William R. Swathel* deceased, to secure a faithful performance of their trust.

The cause was tried, on a traverse, by the defendants, of the plaintiff's replication, at *Haddam, August* term, 1828, before *Lanman,* J.

The plaintiff claimed, that *William R. Swathel,* at the time of his death, was the owner of three shares of stock in the *Hartford Stage Company,* of the amount and value of 1,000 dollars each; which the defendants had refused to inventory.

The defendants admitted, that no inventory of these shares had been made; but claimed, and on that ground rested their defence, that they were not the property of the intestate; and whether they were or were not, was the only question to be tried.

They were formerly the property of *John Babcock.* Of him they were bought, in 1815, by *John Swathel,* at the price of 3000 dollars, for which he gave his promissory notes, and took a bill of sale thereof to himself. The dividends which accrued on these shares, after the purchase, he appropriated to the payment of such notes, until they were fully paid; and thereupon they were given up. At a subsequent time, he made a bill of sale of the shares to *William R. Swathel,* his brother, and placed it in the hands of *Nancy Spelman.* The object of the deposite was a subject of some controversy between the parties. The plaintiff claimed, that it was simply "*to keep.*" The defendants claimed, that *John Swathel* gave express directions to the depositary to retain the shares subject to his order, without suffering *William* to receive them, but at the same time informed her, that the income from them might be paid to *Wil-*

*Middlseex,*
*July, 1829.*

*Alsop*
*v.*
*Swathel.*

liam, during his life, and after his death, the shares might be transferred to his family for their support. After this transaction, *John* directed the company to pay the dividends on these shares to *William;* which was accordingly done, until near the time of *William's* death. At the occasional meetings of the company, *William* attended, upon notice given to him, and was treated, by the company, as the proprietor of the stock. Eventually, the bill of sale was destroyed, by Miss *Spelman.* After the intestate's death, the shares, by direction of *John,* were transferred to *Harriet M. Swathel,* the widow of the deceased.

The judge instructed the jury, that if they should find, that the shares were purchased for *William,* with a view to be his property ; or, that the dividends were paid to him, by authority of *John,* to hold him out to the public, in order to obtain credit thereby, such transaction would be fraudulent against creditors ; and in either case, the jury would return a verdict for the plaintiff. But as every instrument or grant takes effect from its delivery ; and its delivery cannot be operative or presumed against the express consent of the grantor; if the jury should find, that *William* had never paid for the stock; and that *John* directed Miss *Spelman* not to deliver the bill of sale during the life of *William;* that he was ignorant of it ; and that she, as his trustee, was only to deal out to him the income of it, in his life-time, for the relief of his family; they would find the issue for the defendants.

The jury returned a verdict for the defendants ; and the plaintiff moved for a new trial for a misdirection.

*Hungerford* and *Barnes,* in support of the motion.

*N. Smith* and *Sherman,* contra.

HOSMER, Ch. J. 1. It was first insisted, by the plaintiff, that the shares were bought by *John Swathel,* for his brother *William,* and paid for, by the income arising upon them. On the other hand, the defendants claimed, that they were not purchased for *William,* but with the intent of permitting him to receive the dividends for the sustenance of his family, during his life, and after this, of conveying them to the same family, for their support. The court charged the jury, that if they should find, that the shares were purchased for *William,* with

the view of their being his property, their verdict must be for the plaintiff. In reference to the plaintiff, it is too clear to be made a question, that the charge was unexceptionable. It does not appear, that the shares were purchased, by a co-operation with *William ;* or that they were ever paid for, or agreed to be paid for, by him. The case was placed on the most favourable ground for the plaintiff. If the purchase was intended for *William's* benefit, or in other words, was made with the view of the shares becoming his, abstracted from every other enquiry, the jury were to find a verdict for the plaintiff. Under a charge, on the plaintiff's part, free from all objection, the verdict proves, that the purchase was not made for *William R. Swathel,* but by *John Swathel,* for the benefit of *William's* family.

*Middlesex,*
July, 1829.

Alsop
*v.*
Swathel.

2. The plaintiff next claimed, that the shares were conveyed to *William,* by the bill of sale deposited with Miss *Spelman.* This instrument had never been actually delivered to the intestate, but was put into the hands of the lady last named, as the plaintiff admitted, " to keep," and as the defendants insisted, what from the fact conceded is clearly implied, to hold subject to the order of *John Swathel.* The jury were charged, that every instrument takes effect from its delivery ; and that such delivery cannot be presumed against the consent of the grantor. These principles have often been clearly established, and are incontrovertible.

A deed is a writing sealed and *delivered ;* (Co. *Litt.* 171. *b.* 356.) and although no particular form of delivery is requisite, it *is* necessary, that by some expression or act, the obligor indicate his intention to put the deed into the possession of the other party. *Co. Litt.* 36. *Jackson* d. *McCrea* v. *Dunlap,* 1 *Johns. Ca.* 114. *Goodrich* v. *Walker,* 1 *Johns. Ca.* 250. *Jackson* d. *Eames* v. *Phillips,* 12 *Johns. Rep.* 418. *Jackson* d. *Wadsworth* v. *Wendell,* 12 *Johns. Rep.* 355. *Ward's* exrs. v. *Ward,* 2 *Hayw.* 226. And so far is this principle carried, that even a court of equity will not interfere to give effect to a deed not delivered, but considers it as being inchoate or imperfect. 12 *Ves.* jun. 39. 1 *Madd. Chan.* 176. There is no ground for the suggestion, that the deed was *constructively* delivered. Had it been deposited with Miss *Spelman for the use of the grantee,* there would have been a delivery of it in construction of law. *Belden &* al. v. *Carter,* 4 *Day,* 66. 2 *Stark. Ev.* 477. n. (1). But the terms of the deposite exclude this

*Middlesex,*
July, 1829.

Alsop
*v.*
Swathel.

idea ; the direction being *to keep,* or to hold the deed subject to the order of *John Swathel.*

3. It was next contended by the plaintiff, that the dividends were paid to *William,* by authority of *John Swathel,* in order that he might obtain credit ; and that such transaction was fraudulent in respect of creditors. What effect a fraud of this nature would have on the property in question, it is unnecessary to decide. Suffice it to observe, that the charge on this point was in the plaintiff's favour.

By the closing expression of the judge's charge, the jury are instructed as to the grounds on which their verdict must be given for the defendants. They were informed, that if Miss *Spelman* was directed not to deliver the bill of sale to *William,* but was only a trustee, to deal out the income to him during his life, and afterwards to his family ; and if he had never paid for the shares ; on the concurrence of these facts, the defendants were entitled to their verdict. To this part of the charge no exception has been, or could be, made.

4. It was lastly insisted, that the judge did not fully submit the case to the jury, particularly on the question of fraud. For this suggestion there exists no foundation. The jury were distinctly charged on every question raised at the trial. If the fact were otherwise, it should have been stated. No specific charge was requested, by either party. " It is sufficient," says *Story,* J. " that the court has given no erroneous directions. If either party deems any point presented by the evidence to be omitted in the charge, it is competent for such party to require an opinion from the court upon that point. If he does not, it is a waiver of it. The court cannot be presumed to do more, in ordinary cases, than to express its opinions upon the questions, which the parties themselves have raised at the trial." *Pennock* & al. v. *Dialogue,* 2 *Pet. U. S. Rep.* 15, 16.

The other Judges were of the same opinion, except DAG-GETT, J., who gave no opinion, having been of counsel in the cause.

New trial not to be granted.